## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**MARK A. FREEMAN and**
**TIMOTHY K. STRINGER,**

       **Plaintiffs,**

       **v.**                         **Case No. 02-2249-JWL**

**GERBER PRODUCTS COMPANY,**

       **Defendant.**
_____

## MEMORANDUM AND ORDER

Plaintiffs Mark A. Freeman and Timothy K. Stringer own United States Patent No. 5,186,347 (the '347 patent), which is a patent for a spill-proof closure used in dispensing liquid beverages.  They allege that sippy cups sold by the defendant Gerber Products Company infringe certain claims of the '347 patent.  The court has already construed the disputed claim limitations of the '347 patent, *see generally Freeman v. Gerber Prods. Co.*, 357 F. Supp. 2d 1290 (D. Kan. 2005) and has granted in part and denied in part Gerber's motion for summary judgment based on noninfringement, *see generally Freeman v. Gerber Prods. Co.*, 388 F. Supp. 2d 1238 (D. Kan. 2005).  The matter is now before the court on Gerber's motion for summary judgment that the '347 patent is invalid (doc. #157) and Gerber's motions to exclude the expert testimony of plaintiffs' experts Charles Finch, Dr. Robert Sorem, and Carey Bisbee (docs. #160, 162 & 163, respectively).  For the reasons explained below, these motions are denied in their entirety.

**MOTION FOR SUMMARY JUDGMENT OF INVALIDITY**

**I.      Statement of Facts**

The '347 patent issued on February 16, 1993.  In this lawsuit for infringement of the

'347 patent, the only independent claims at issue are claims 7 and 14.  Those claims describe

a controllable valved closure for use in dispensing a beverage from a container.  In simple

terms, the closure (*see* Figure 2 of the '347 patent, inset to the left below) generally consists

 of a beverage container lid 10 with a spout 12,

a generally cylinder-shaped valve structure 13

that attaches to the inner surface of the spout,

and, within that valve structure, a thin

membrane with slit(s) that open and close to

control the flow of fluid through the valve and

out the spout.   With respect to the valve

structure 13, claims 7 and 14 of the '347

patent both disclose "a thin membrane having attachable means for attaching said thin

membrane to an inner surface of said closure."  '347 Patent, Col. 4, ll. 18-20, 59-61.

2

U.S. Patent No. 3,674,183 to Venable ("Venable") issued on July 4, 1972.[1]  Venable generally discloses a squeeze bottle with a dispersing valve comprised of a disc with a



FIG. 1

sinuous slit.  *See* Venable, Abstract & Col. 2, ll. 10-18.  The "disc" in Venable is analogous to the "thin membrane" in the '347 patent, with the most relevant issue at this procedural juncture being the structure of the disc and the manner in which it is affixed to the bottle.  In Venable (*see* Figure 1 of Venable, inset to the left), a cap 3 is threaded onto the neck 2 of the bottle; it is this cap 3 which includes an annular groove 4 into which the disc 5 is placed.  *See* Venable, Col. 2, ll. 19-24.

U.S. Patent No. 4,133,457 to Klassen ("Klassen") issued on January 9, 1979.  Klassen discloses a liquid dispenser bottle with a valve.  In Klassen, the valve generally consists of a flexible septum which covers the dispenser outlet and is clamped in place by a nozzle cap.  *See* Klassen, Abstract & Col. 2, ll. 25-29.  The "septum" in Klassen is analogous to the "thin membrane" in the '347 patent.  Again, the most relevant issue at this procedural juncture is the structure of the septum and the manner in which it is affixed to the bottle.  In Klassen (*see*

---

[1] The parties dispute whether Gerber has established that Venable and Klassen are, in fact, prior art.

Figure 1 of Klassen, inset to the right), the septum 26 is seated at the top of the neck 14 of the bottle and is clamped in place by the spout 18. *See* Klassen, Col. 3, ll. 25-28.



U.S. Patent No. 4,993,568 to Morifuji ("Morifuji") issued on February 19, 1991. Morifuji discloses a nursing bottle nipple. U.S. Patent No. 4,941,598 to Lambelet ("Lambelet") issued on July 17, 1990. Lambelet discloses a dosing cap and tube operating by squeezing the tube to increase the pressure within the tube.

Gerber seeks summary judgment that the '347 patent is invalid as anticipated or obvious in view of Venable and Klassen on the grounds that each and every element of claims 7 and 14 are disclosed in Venable and Klassen. Gerber further contends that, to the extent that any element is not disclosed in Venable or Klassen, it would have been obvious to combine Venable or Klassen with the prior art, including but not limited to Morifuji or Lambelet.

## II.  Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In applying this standard, the court views the evidence and all

4

reasonable inferences therefrom in the light most favorable to the nonmoving party. *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Wright ex rel. Trust Co. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler*, 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Spaulding*, 279 F.3d at 904 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256; *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001). Rather, the nonmoving party

must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Mitchell v. City of Moore*, 218 F.3d 1190, 1197-98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671).  To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Adams,* 233 F.3d at 1246.

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut"; rather, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

## III.   Analysis

For the following reasons, the court concludes that Gerber has failed to demonstrate it is entitled to summary judgment based on the '347 patent's invalidity.  Genuine issues of material fact preclude a finding that each and every claim limitation of the '347 patent was disclosed in either Venable or Klassen and, therefore, Gerber has not met its burden of demonstrating by clear and convincing evidence that the '347 patent is invalid as anticipated by Venable or Klassen.  Additionally, Gerber has failed to address the relevant legal standards for the court to make a proper obviousness determination and, consequently, Gerber also has failed to demonstrate by clear and convincing evidence that the '347 patent is invalid as obvious.

### A.   Anticipation

6

"A claim is anticipated under 35 U.S.C. § 102 if each and every limitation is found either expressly or inherently in a single prior art reference." *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1381 (Fed. Cir. 2005) (quotation omitted). "A claim limitation is inherent in the prior art if it is necessarily present in the prior art, not merely probably or possibly present." *Akamai Techs., Inc. v. Cable & Wireless Internet Servs., Inc.*, 344 F.3d 1186, 1192 (Fed. Cir. 2003). The dispositive question is whether one skilled in the art would reasonably understand or infer from the prior art reference's teaching that every claim limitation was disclosed in that single reference. *Id.* Because patents are presumed valid, *see* 35 U.S.C. § 282, a party seeking to establish that particular claims are invalid as anticipated must overcome that presumption by clear and convincing evidence. *Nystrom v. TREX Co.*, 424 F.3d 1136, 1149 (Fed. Cir. 2005) (quotation omitted). "Whether a prior art reference anticipates a claimed invention is a question of fact." *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1379 (Fed. Cir. 2005).

Whether a patent is invalid as anticipated is a two-step inquiry. *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1406 (Fed. Cir. 2004). The first step in the analysis is construing the claims of the patent. *Id.* Here, the court has already construed the claims of the '347 patent. *See generally Freeman v. Gerber Prods. Co.*, 357 F. Supp. 2d 1290 (D. Kan. 2005). In relevant part, claims 7 and 14 of the '347 patent both disclose "a thin membrane having attachable means for attaching said thin membrane to an inner surface of said closure." '347 Patent, Col. 4, ll. 18-20, 59-61. The court has construed the limitation "thin membrane having attachable means" to mean "a thin, soft, pliable sheet having a wall

7

around its perimeter." *Freeman*, 357 F. Supp. 2d at 1307.  And, the court has construed the structure for performing the recited function of "attaching said thin membrane to an inner surface of said closure" (i.e., the "means") to be "an interlocking snap fit formed by a groove on the exterior of the wall around the perimeter of the thin membrane which abuts and is affixed to a ridge on the interior of the spout." *Id.* at 1304.  Having already construed these claim limitations, then, the court turns to the second step in the anticipation analysis: comparing the properly construed claims to the prior art.  *Power Mosfet Techs.*, 378 F.3d at 1406.

This limitation is a means-plus-function limitation permitted by 35 U.S.C. § 112, ¶ 6. As such, anticipation requires both (1) functional identity, and (2) either structural identity or equivalence.  *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1378 (Fed. Cir. 2004).  In this case, functional identity is undisputed; both Venable and Klassen teach means for attaching the disc (in Venable) and the septum (in Klassen) to the inner surface of the lid, just as the '347 patent discloses means for attaching the thin membrane to an inner surface of the lid.  *See Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1372 (Fed. Cir. 2002) ("To anticipate a claim reciting a means-plus-function limitation, the anticipatory reference must disclose the recited function identically.").  The more pivotal issue here is whether the structures disclosed for performing those identical functions are structurally identical or equivalent.

Anticipation of a means-plus-function claim element is governed by the same standard that applies in determining whether such an element is literally infringed.  *In re Donaldson*

*Co.*, 16 F.3d 1189, 1193 (Fed. Cir. 1994) (en banc) (holding that 35 U.S.C. § 112 ¶ 6, which limits means-plus-function claims to the structures described in the specification and their equivalents, "applies regardless of the context in which the interpretation of means-plus-function language arises, i.e., whether as part of a patentability determination in the PTO or as part of a validity or infringement determination in a court").  Consequently, to support a finding of anticipation, there must be evidence to establish that "the assertedly equivalent structure performs the claimed function in substantially the same way to achieve substantially the same result as the corresponding structure described in the specification."  *Frank's Casing Crew & Rental Tools*, 389 F.3d at 1378; *see also In re Bond*, 910 F.2d 831, 833 (Fed. Cir. 1990) (in anticipation analysis, means-plus-function limitation must be construed to cover structural equivalents).

In support of Gerber's argument that the '347 patent is invalid as anticipated, Gerber relies on the contents of the Venable and Klassen patents as well as the expert declaration of Bruce Mueller.  As mentioned previously, Venable generally discloses a dispersing valve with a disc having a sinuous slit, with the disc being akin to the "thin membrane" in the '347 patent.[2]  Venable teaches that this disc is made a part of the valve in the following manner:

_____

[2] Plaintiffs dispute whether Klassen and Venable disclose a thin membrane at all (as the court has construed that term) because, plaintiffs argue, neither Klassen's septum nor Venable's disc can properly be considered a thin, soft, pliable sheet suitable for use in a child's spill-proof cup operated by the application of negative external pressure.  This argument could provide additional grounds upon which the court could deny Gerber's motion for summary judgment.  But, without deciding that issue, the court is merely referring to Klassen's septum and Venable's disc, for the sake of simplicity, as structures which are sufficiently analogous to the thin membrane in the '347 patent to warrant consideration of

an interiorly threaded cap 3 includes an annular groove 4 into which the disk 5 is placed; the flexible bottle (akin to the beverage container in the '347 patent) includes a neck portion 2 which is exteriorly threaded to receive the interiorly threaded cap 3 into which the disc is affixed.  Venable, Col. 2, ll. 19-24; *see also* Venable, Figure 1, *supra*.  In Mr. Mueller's declaration, he states that this structure is equivalent to the claimed structure in the '347 patent for performing the recited function of "attaching the thin membrane to an inner surface of said closure."   Mueller Decl. ¶ 10, at 3.   According to Mr. Mueller, the working components of both structures are identical inasmuch as each has a rectangular groove that acts as the "female" component of an interlocking connection and a corresponding rectangular projection that acts as the "male" component of the interlocking connection. *Id.* He opines that a person of ordinary skill in the art would have considered Venable's edge-and-groove structure and the '347 patent's ridge-and-groove structure to be interchangeable for performing the function of holding the thin membrane in place. *Id.* at 3-4.  Also as mentioned previously, Klassen generally discloses a liquid dispenser bottle with a valve which consists of a flexible septum 26 seated at the top of the neck 14 of the bottle and is clamped in place by the spout 18. *See* Klassen, Col. 3, ll. 25-28; *see also* Klassen, Figure 1, *supra*.  In Mr. Mueller's declaration, he also opines that a person of skill in the art would have known that the Venable structure was interchangeable and would have considered this

---

the structure which affixes the thin membrane, septum, or disc to the lid.

to be an insubstantial difference; and that although the Klassen structure is not a snap fit it results in the membrane being held in place by interlocking components.

Plaintiffs correctly point out that according to the court's claim construction order the '347 patent discloses a thin membrane having a wall around its perimeter and both Venable and Klassen lack a wall around the perimeter of the disc or septum.  Gerber does not dispute this, but focuses instead on the fact that this is a means-plus-function reference that anticipates if it teaches an identical or an equivalent structure that performs the recited function of attaching the thin membrane to the inner surface of the closure.  Gerber contends that the structures are equivalent because the slight differences in the attachment structures are insubstantial because they both use the same physical structures to attach the membrane in the same way and achieve the same result.

Plaintiffs have directed the court to ample evidence from which a rational trier of fact could find that the differences between the structures disclosed in the '347 patent, on the one hand, and Venable and/or Klassen, on the other, are not insubstantial and, hence, not equivalent.  An examination of the patents themselves reflects that the structures disclosed in Venable and/or Klassen do not perform the recited function of holding the thin membrane (or disc or septum) in place in substantially the same way as the structure disclosed in the '347 patent.  The thin membrane in the '347 patent discloses a wall around its perimeter and this wall is attached to the inner surface of the lid by a ridge-and-groove structure which forms an interlocking snap fit.  In contrast, in Venable the disc is held in place by virtue of its outermost edge being placed in a groove on the interior of the cap.  And, in Klassen the

septum is held in place by virtue of being clamped between the lid and the container.  Both of these teach an edge-and-groove structure.  Neither of them teach a wall around the perimeter of the membrane with the wall being the structure by which the thin membrane is affixed to the *interior* of the lid.  In other words, in Venable the disc is affixed into the cap of the dispensing bottle and in Klassen the septum is affixed to the lid of the container.  In the '347 patent, on the other hand, the thin membrane is affixed into the cylinder-shaped valve structure so that the thin membrane has a "wall around its perimeter" and it is this valve assembly, not the thin membrane itself, that forms a part of the ridge-and-groove structure by which the exterior of the valve assembly is affixed to the interior of the spout.  Indeed, these distinctions are buttressed by the report of plaintiffs' expert, Carey Bisbee.  *See* Bisbee Decl. ¶ 5-8, at 2-4.  Based on this evidence, the court has no difficulty concluding that a rational trier of fact could conclude that these constitute significantly different attachment structures.  *Cf. C.R. Bard, Inc. v. M3 Systems, Inc.*, 157 F.3d 1340, 1361 (Fed. Cir. 1998) (reversing jury verdict of invalidity for anticipation and noting that "it is incorrect to construe terms in means-plus-function form as disembodied from the structure in the specification").

Additionally, a rational trier of fact could find that the structures disclosed in Venable and/or Klassen do not perform the recited function of holding the thin membrane (or disc or septum) in place in a manner so as to achieve substantially the same result as the "attachable means" structure disclosed in the '347 patent.  Plaintiff's expert, Mr. Bisbee, has opined that the structure disclosed in Venable achieves a very different result than the structure disclosed in the '347 patent:

12

> When the '347 patent's membrane become[s] distorted during use, the wall around the perimeter of the membrane and the interlocking snap fit would help ensure that the valve remained in place in the lid. The Venable disc would not be as securely attached to the lid and might become dislodged when the disc (which has no sidewall around the disc's perimeter) flexes and becomes distorted during use. The edges of the Venable disk could have a tendency to disengage from the annular groove 4 in the lid when the device issued.

Bisbee Decl. ¶ 6, at 3. In other words, the retaining ring-type structure disclosed in the '347 patent is attached more securely to the lid than a disc such as the one found in Venable that is attached to the lid by relying solely on its edge. He also explains that the "sandwiching" of the septum in Klassen "achieves a very different result [than the structure disclosed in the '347 patent] in that the Klassen septum would not be held in place and attached to the lid if the lid was removed from the cup." *Id.* ¶ 8, at 4. In sum, Gerber has not established by clear and convincing evidence that one skilled in the art would reasonably understand or infer that Venable or Klassen anticipate a valve structure similar to the one disclosed in the '347 patent.[3] Accordingly, Gerber's motion for summary judgment based on anticipation is denied.

The court also rejects Gerber's anticipation arguments based on Klassen for the additional reason that Gerber has not met its initial summary judgment burden of demonstrating that each and every limitation found in the '347 patent was disclosed in

---

[3] The court declines to address the parties' arguments concerning the other claim limitations because, given the court's determination that a genuine issue of material fact exists concerning whether this claim limitation was anticipated by Venable and/or Klassen, Gerber has not demonstrated that it is entitled to summary judgment on the grounds that the '347 patent is invalid as anticipated in any event.

13

Klassen.  Instead of explaining how Klassen anticipates each and every limitation of the '347 patent, Gerber merely advances a brief (two sentence), categorical argument that Klassen incorporates Venable by reference.  The court disagrees.  It is true that "[m]aterial not explicitly contained in the single, prior art document may still be considered for purposes of anticipation if that material is incorporated by reference into the document."  *Advanced Display Systems, Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000).  But, in order to "incorporate material by reference, the host document must identify with detailed particularity what specific material it incorporates and clearly indicate where that material is found in the various documents."  *Id.*  In this case, Klassen does not cite Venable in such a manner so as to make clear that Venable is effectively a part of Klassen as though Venable were explicitly contained therein.  Klassen's only reference to Venable is set forth under "Background of the Invention" in which Klassen discusses the field of the invention. Klassen states:

> A variety of squeeze bottle outlet closure sealing arrangements have been devised . . . .  These prior art structures are satisfactory to some extent in rendering a squeeze bottle dispenser spill-proof by disposing a valved barrier in the outlet.  However, none of these barrier structures appears to have been satisfactory since these structures typically greatly inhibit the expulsion of the contained liquid through the barrier, greatly retard the relaxation of the elastic squeeze bottle, or they may be prohibitively expensive.  Thus, the device of Venable U.S. Pat. No. 3,674,183 involves a valve disk having a sinuous slit cut at an angle with respect to the face of the disk which, irrespective of its efficiency as a valve, appears impractical for purposes of mass production.

Klassen, col. 1, ll. 35-39.  This statement does not identify with detailed particularity that it is incorporating any specific material from Venable.  Clearly, then, it does not specifically

14

indicate where any such material is found in Venable.  Thus, Klassen does not incorporate Venable by reference, or at least Gerber has not explained how Klassen incorporates Venable in any material respect.  Consequently, Gerber's motion with respect to Klassen is denied for this additional reason.

### B.    Obviousness

A patent is invalid as obvious if the differences between it and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the pertinent art.  35 U.S.C. § 103(a); *Graham v. John Deere Co.*, 383 U.S. 1, 13-14 (1996).  In the obviousness analysis, the patent is presumed valid, 35 U.S.C. § 282, and the movant has the burden to show invalidity of the claims by clear and convincing evidence as to the underlying facts.  *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1349 (Fed. Cir. 2001).  The ultimate determination of obviousness is a question of law for the court, but several factual findings underlie its determination.  *Akamai Techs., Inc. v. Cable & Wireless Internet Servs., Inc.*, 344 F.3d 1186, 1195 (Fed. Cir. 2003) (citing *Graham*, 383 U.S. at 17-18).  These four underlying factual inquiries, well known as the *Graham* factors, include the following: (1) the scope and content of the prior art; (2) the level of ordinary skill in the field of invention; (3) the differences between the claimed invention and the prior art; and (4) any objective evidence of nonobviousness (i.e., secondary considerations) such as long-felt need and commercial success.  *Id.*; *McGinley*, 262 F.3d at 1349.  Federal Circuit precedent "clearly establishes that the district court *must* make *Graham* findings before invalidating a patent for obviousness."

*Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 663-64 (Fed. Cir. 2000) (emphasis added). The necessity of making *Graham* findings is especially important where, as here, the invention is less technologically complex because of an increased danger that the ease with which the invention can be understood creates a risk that the court might fall victim to hindsight syndrome. *Id.* Here, Gerber did not address each of the *Graham* factors in a manner that would allow the court to undertake a proper obviousness analysis.

Turning first to the scope and content of the prior art, "[i]n order to prevent a hindsight-based obviousness analysis, [the Federal Circuit has] clearly established that the relevant inquiry for determining the scope and content of the prior art is whether there is a reason, suggestion, or motivation in the prior art or elsewhere that would have led one of ordinary skill in the art to combine the references." *Id.* at 664. Where the art in question is relatively simple (as is the case here), "the opportunity to judge in hindsight is particularly tempting." *McGinley*, 262 F.3d at 1351. Such a suggestion or motivation to combine may come from the prior art references themselves, from knowledge of one skilled in the art, or, in some cases, from the nature of the problem to be solved. *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1165 (Fed. Cir. 2006). Whether a motivation to combine prior art references has been demonstrated is a question of fact. *Id.* at 1164; *McGinley*, 262 F.3d at 1351.

Here, the only evidence Gerber presented on the issue of motivation to combine the prior art references is a statement in Mr. Mueller's declaration in which he states the different "attachment means" structures were well known to be suitable for attaching a membrane valve to the lid of a container and choosing a particular structure would have been a routine

16

matter of design choice to select the structure most suited to the manufacturing equipment available, the application, and other considerations that would have been well known to those skilled in the art. Mueller Decl. ¶ 16, at 7. But, Mr. Mueller's opinion does not speak to the issue of what it was about the prior art that would have driven one of ordinary skill in the art to combine the references. Moreover, plaintiffs have cited testimony from Mr. Mueller's deposition which seems to undercut his opinion concerning a motivation to combine. Specifically, he testified that there would have been nothing beneficial about the Drobish valve structure that would have driven him to use it over Venable; that there would have been nothing beneficial about replacing the Venable disc attachment structure with the attachment structure taught in Lambelet; and that there would have been nothing beneficial about replacing the Venable disc attachment structure with the attachment structure taught in Morifuji. Gerber's evidence on motivation to combine falls far short of the clear and particular, actual evidence required to show a motivation to combine. *See Group One, Ltd. v. Hallmark Cards, Inc.*, 407 F.3d 1297, 1304 (Fed. Cir. 2005) ("A showing that the motivation to combine stems from the nature of the problem to be solved must be 'clear and particular, and it must be supported by actual evidence.'"). Given the lack of meaningful and persuasive evidence on this issue from Gerber's perspective, combined with the competing evidence on this issue from plaintiffs, Gerber has not presented clear and convincing evidence of motivation to combine sufficient to meet its summary judgment burden. Plaintiffs have raised a genuine issue of material fact on this issue.

17

Moreover, Gerber's original memorandum in support of its motion for summary judgment did not even address the second *Graham* factor—the level of ordinary skill in the field of invention.  This factor is an integral part of the *Graham* analysis.  *Ruiz*, 234 F.3d at 666.  When plaintiffs pointed this out in their response brief, Gerber argued in its reply brief that this information was included in Mr. Mueller's expert report which was submitted as an exhibit to its original memorandum.  Plaintiffs, however, were not required to scour the summary judgment record for the evidence upon which Gerber intended to rely to establish this fact.  In seeking summary judgment Gerber had the initial burden of demonstrating the absence of a genuine issue of material fact that the '347 patent was invalid as obvious in view of prior art.  Having failed to address each of the relevant *Graham* factors in its opening brief, the court will not allow Gerber to satisfy its summary judgment burden by relying on an argument it did not raise for the first time until its reply brief where plaintiffs did not have an opportunity to respond to that argument.  *See Green v. New Mexico*, 420 F.3d 1189, 1196-97 (10th Cir. 2005) ("Generally, the nonmoving party should be given an opportunity to respond to new material raised for the first time in the movant's reply."); *Minshall v. McGraw Hill Broad. Co.*, 323 F.3d 1273, 1288 (10th Cir. 2003) (argument raised for the first time in reply brief is waived).

Turning to the final *Graham* factor, notwithstanding Gerber's failure to address the objective evidence of nonobviousness, plaintiffs have nonetheless presented an abundance of uncontroverted evidence from which a rational trier of fact could conclude that secondary considerations weigh against a finding of obviousness.  Secondary considerations can include

commercial success, unexpected results, copying, long-felt but unresolved need, and the failure of others to develop the invention. *Syntex (U.S.A.) LLC v. Apotex, Inc.*, 407 F.3d 1371, 1378 (Fed. Cir. 2005). In this case, viewing the evidence in the light most favorable to plaintiffs, plaintiffs' patented sippy cup design has enjoyed widespread commercial success. It is licensed to four spill-proof cup manufacturers, including Munchkin and other competitors of Gerber. Apparently, there was a need for such a cup in the industry as evidenced by these licenses as well as the fact that Gerber covertly approached plaintiffs in 1996 and offered to license the '347 patent. Additionally, Becky Bachman, the designer of Gerber's spill-proof cups, testified that Gerber developed its line of spill-proof cups because consumer research showed there was a need for a true spill-proof cup. There is also evidence from which a rational trier of fact could find that Gerber copied the design of the '347 patent and in 1997 launched a highly successful product line.

In sum, Gerber's argument that the '347 patent is invalid as obvious is wholly without merit given Gerber's failure to even address all of the *Graham* factors, particularly when combined with the ample evidence of secondary considerations presented by plaintiffs which suggest that the design of the '347 patent was far from obvious. Accordingly, Gerber's motion for summary judgment is denied in its entirety.

## MOTION TO EXCLUDE EXPERT TESTIMONY OF CHARLES FINCH

If plaintiffs are able to establish that Gerber infringed the '347 patent, the minimum measure of damages will be a reasonable royalty. 35 U.S.C. § 284; *Dow Chemical Co. v.*

*Mee Indus., Inc.*, 341 F.3d 1370, 1381 (Fed. Cir. 2003); *Crystal Semiconductor Corp. v. TriTech Microelectrics Int'l, Inc.*, 246 F.3d 1336, 1353 (Fed. Cir. 2001).  Here, the parties seem to agree that the royalty base is well in excess of $150 million, but they dispute the applicable royalty rate.  Plaintiff's damages expert, Charles Finch, has opined that a reasonable royalty rate would be six percent.  Gerber now asks the court to exclude that opinion for two reasons.  First, Gerber contends that Mr. Finch's opinion erroneously relied on an average industry royalty rate for non-comparable goods, citing *Utah Medical Products, Inc. v. Graphic Controls Corp.*, 350 F.3d 1376, 1385 (Fed. Cir. 2003).  Second, Gerber contends that Mr. Finch erroneously ignored plaintiffs' own licensing practices in determining a reasonable royalty rate, citing *Riles v. Shell Exploration & Production Co.*, 298 F.3d 1302, 1313 (Fed. Cir. 2002).

Expert testimony may be received as an aid to determining the amount of damages. § 284; *Dow Chemical Co.*, 341 F.3d at 1382.  The analytical framework for determining a reasonable royalty is well established.  The royalty may be based upon an established royalty, if there is one.  *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc).  If there is not an established royalty (as is the case here), then a reasonable royalty is that to which the plaintiff and the defendant might have agreed during a hypothetical negotiation at the time infringement began.  *Id.*; *see also Applied Med. Res. Corp. v. United States Surgical Corp.*, 435 F.3d 1356, 1361 (Fed. Cir. 2006).  In making this determination, the Federal Circuit endorses, among other methods, the fifteen-factor approach first set out in

*Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970).

*Micro Chemical, Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1393 (Fed. Cir. 2003).

In this case, Mr. Finch's thirty-three page expert report includes a detailed and thorough analysis of the fifteen *Georgia-Pacific* factors, including (1) the royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty; (2) the rates paid by the licensee for the use of other patents comparable to the patent-in-suit; (3) the nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold; (4) the licensor's established policy and marketing program to maintain its patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly; (5) the commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory, in the same line of business, or whether they are inventor and promoter; (6) the effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of its non-patented items, and the extent of such derivative or convoyed sales; (7) the duration of the patent and the term of the license; (8) the established profitability of the product made under the patent, its commercial success, and its current popularity; (9) the utility and advantage of the patent property over the old modes or devices, if any, that had been used for working out similar results; (10) the nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and

the benefits to those who have used the invention; (11) the extent to which the infringer has made use of the invention, and any evidence probative of the value of that use; (12) the portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions; (13) the portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer; (14) the opinion and testimony of qualified experts; and (15) lastly, the amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement. In analyzing factor (15), Mr. Finch stated that "as presented in the discussion of [*Georgia-Pacific*] Factor 12, royalty rates in the consumer goods, retail and leisure industry averaged 5.4% of gross sales." Finch Report, at 31. He then reasoned that based on the effect of the other *Georgia-Pacific* factors discussed previously, he would expect a royalty rate above the industry average, at a rate of approximately seven percent. He also explained that the royalty rate would be five percent based on a profit split analysis. He concluded that a royalty rate of six percent is reasonable based on the mid-point between the two different methods.

Gerber now asks the court to exclude Mr. Finch's testimony because the average industry royalty rate upon which Mr. Finch relied in assessing factor (15) was based on royalty rates for non-comparable goods. Mr. Finch discussed this industry royalty rate in analyzing factor (12). In factor (12), Mr. Finch stated that "[a]ccording to the December

2005 issue of *Licensing Economics Review*, royalty rates in the consumer goods, retail, and leisure industry averaged 5.4% with a median rate of 5.0%." *Id.* at 28.  In support of Gerber's motion to exclude Mr. Finch's expert opinion, Gerber relies on a declaration from Jeffery A. Stec, Ph.D.  In that declaration, Mr. Stec explains that *Licensing Economics Review* ("LER") is a publication which includes, among other things, publicly available royalty rates; that the categories of the licenses in the LER consumer goods, retail, and leisure industries relied on by Mr. Finch include household appliances, furniture and fixtures, consumer electric, textiles, sporting goods, toys, and personal care (toiletries); that the "consumer goods" database is filled with licenses completely unrelated to the '347 patent; and that Mr. Finch's deposition testimony reflects that he did not understand the LER database.  Even if the LER database was based on royalty rates for some non-comparable goods, this is not a valid basis for excluding Mr. Finch's opinion.  *See Rite-Hite Corp.*, 56 F.3d at 1577 (evidence of royalty rates prevalent in the industry is relevant to determining a reasonable royalty).  Where an expert utilizes the accepted *Georgia-Pacific* analysis and explains the effect that each factor would have on a negotiated royalty, as Mr. Finch did here, the issue of whether that opinion is based on sufficiently reliable facts is not a valid basis for excluding testimony under Rule 702.  *Micro Chemical, Inc. v. Lextron, Inc.*, 317 F.3d 1378, 1393 (Fed. Cir. 2003).  Here, it could certainly be inferred that the average industry royalty rate for "consumer goods" would encompass products like the spill-proof cups at issue here, even if it included other non-comparable products.  As such, Gerber's arguments which target one aspect of his opinion go to the weight, not the admissibility, of his opinion.  *See,*

*e.g.*, *Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 441-42 (D. Del. 2004) (holding the plaintiff's argument that the defendant's expert relied too heavily on two of the fifteen *Georgia Pacific* factors went to the weight of the expert's opinion, not its admissibility).

The court finds Gerber's reliance on *Utah Medical Products* to be unpersuasive. In support of this argument, Gerber points out that the LER database includes non-comparable goods such as the "Koala Corp." license agreement which Mr. Finch stated is not comparable to the '347 patent. But, although the LER database may include the Koala Corp. license agreement and other non-comparable goods, it is incorrect to state that Mr. Finch calculated the royalty based on any other specific non-comparable goods. In this respect, the Federal Circuit's reasoning in *Utah Medical Products* is inapposite. In *Utah Medical Products*, the Federal Circuit affirmed the district court's exclusion of expert testimony as unreliable. 350 F.3d at 1385. But, it appears from the Federal Circuit's discussion that the expert in that case relied on specific non-comparable industry licenses, *id.* at 1385 (noting the defendant "attempted to offer expert testimony based on industry license agreements" and some of the plaintiff's license agreements), rather than a broad industry average as a gauge in his analysis, as Mr. Finch did in this case. Evidence of royalty rates prevalent in the industry is generally relevant to determining a reasonable royalty. *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1577 (Fed. Cir. 1995).

The court also finds Gerber's argument based on *Riles* to be without merit, both factually and legally. In *Riles*, the Federal Circuit held that the plaintiff's damages expert

erroneously ignored the plaintiff's "established licensing practice." 298 F.3d at 1313. In *Riles*, however, the plaintiff *had* an established licensing practice. In this case, as Mr. Finch noted, at the time at which the hypothetical negotiation would have taken place plaintiffs had not entered into any licensing agreements for the technology in the '347 patent, *see* Finch Report, at 10, and therefore plaintiffs did not yet at that time have an established licensing practice. Moreover, as a factual matter, Mr. Finch did not "ignore" plaintiffs' subsequent licensing practices. Mr. Finch discussed plaintiffs' later licenses to Safety 1st, Johnson & Johnson, Munchkin, Inc. and The First Years and discounted the significance of the first three because he believed they were entered into under duress and therefore did not provide an accurate indication of a reasonable royalty agreement between a hypothetical willing licensee and licensor. *See* Finch Report, at 10-13. The court will not categorically exclude Mr. Finch's testimony simply because Gerber does not agree with or like the reasons why Mr. Finch discounted the significance of plaintiffs' licensing agreements with Safety 1st, Johnson & Johnson, and Munchkin Inc. Accordingly, Gerber's motion to exclude the expert testimony of Mr. Finch is denied.

## MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. ROBERT SOREM

Limitations 7(f) and 14(f) of the '347 patent claim "a slit through" or a "disjoined portion within" "a planar section of said thin membrane." The court has already construed these claim limitations to mean a slit through or a disjoined portion within "the section of the thin membrane that has a flat, two-dimensional quality." *Freeman v. Gerber Prods. Co.*, 357

F. Supp. 2d 1290, 1313 (D. Kan. 2005).  Gerber now seeks to exclude the opinion of plaintiffs' expert, Dr. Robert Sorem, that Gerber's spill-proof cup valves include a slit through a "planar section" of the thin membrane.  Gerber points out that Dr. Sorem essentially opined that the term "section" is synonymous with "portion"; that the relevant "portion" can be evaluated by looking at the top view of a drawing of the Gerber valve, which essentially translates "portion" to mean "surface"; that (from the top view) the surface of the membrane where the slits are located has a flat, two-dimensional quality; that the opposite surface need not be considered; but, even if it were considered, its curvature is so minuscule that it does not affect his opinion that the relevant portion of the membrane has a flat, two-dimensional quality.

Gerber contends that Dr. Sorem's methodology is nothing more than an effort to re-write the claims, substituting the words planar "surface" for planar "section."  Gerber also contends that Dr. Sorem's opinion that the curvature of the opposite surface is minuscule should be excluded because his report contains no evidence of how he made this determination.  Gerber further contends that Dr. Sorem's methodology is unreliable because it leads to the conclusion that all surfaces meet the "planar section" limitation.

After careful consideration of the arguments raised in Gerber's motion, the court concludes that, ultimately, those arguments are nothing more than a disagreement with Dr. Sorem's opinion that the Gerber products include a slit through or a disjoined portion within a section of the thin membrane having a flat, two-dimensional quality.  Gerber has not presented any meaningful argument from which the court can find that it has a valid basis in

law to exclude Dr. Sorem's opinions on this issue.  Rather, the arguments asserted by Gerber seem to be ones that are more appropriately directed toward the presentation of evidence at trial, not the categorical exclusion of Dr. Sorem's opinions.  Accordingly, Gerber's motion to exclude the expert testimony of Dr. Sorem is denied.

### MOTION TO EXCLUDE EXPERT TESTIMONY OF CAREY BISBEE

Limitations 7(e) and 14(e) of the '347 patent claim require "means for attaching said thin membrane to an inner surface of said closure."  As explained previously, the court has already construed the structure for performing this attachment function to be "an interlocking snap fit formed by a groove on the exterior of the wall around the perimeter of the thin membrane which abuts and is affixed to a ridge on the interior of the spout."  Gerber now seeks to exclude the opinion of plaintiffs' expert, Carey Bisbee, that Gerber's valve attachment structure constitutes equivalent structure.  Mr. Bisbee opines that both the '347 patent's snap fit structure and the Gerber valve attachment structure include a contact-and-interference-type fit (sometimes referred to as a press fit or a friction fit) between the outer surface of the valve and an inner surface of the lid, thus the Gerber products' friction fit structure is included in the claimed interlocking snap fit.  Gerber contends that because the court has construed the means to require a snap fit, the court should exclude Mr. Bisbee's opinion that the friction fit constitutes equivalent structure because it is contrary to the court's claim construction order.  The court disagrees.

The court has already construed the terms of the '347 patent as a matter of law. The question that will be presented at trial is whether, as a factual matter, Gerber's products infringe the claims at issue. As such, plaintiff must present evidence concerning the factual issue of whether Gerber's products infringe one or more of the claims of the '347 patent because they contain equivalent structure to that disclosed in the '347 patent for performing the recited function of attaching the thin membrane to an inner surface of the closure. Mr. Bisbee's opinion goes directly to the heart of that issue inasmuch as he explains why there are only insubstantial differences between the valve attachment structure in Gerber products and the "snap-fit structure" identified by the court. As with Gerber's motion with respect to Dr. Sorem, the fact that Gerber does not like Mr. Bisbee's opinion does not provide the court with a valid basis for excluding that opinion. Gerber's motions relating to both experts are wholly without merit. Accordingly, Gerber's motion to exclude the expert testimony of Mr. Bisbee is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Gerber's Motion for Summary Judgment that the Patent In-Suit is Invalid (doc. #157) is denied. Gerber's request for oral argument on this motion is denied.

**IT IS FURTHER ORDERED** that Gerber's Motion to Exclude Expert Testimony of Charles Finch (doc. #160) is denied.

**IT IS FURTHER ORDERED** that Gerber's Motion to Exclude Expert Testimony of Dr. Robert Sorem (doc. #162) is denied.

**IT IS FURTHER ORDERED** that Gerber's Motion to Exclude Expert Testimony of Carey Bisbee (doc. #163) is denied.

**IT IS SO ORDERED** this 13th day of September, 2006.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge