# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**MARK A. FREEMAN and**
**TIMOTHY K. STRINGER,**

        **Plaintiffs,**

        **v.**                          **Case No. 02-2249-JWL**

**GERBER PRODUCTS COMPANY,**

        **Defendant.**
_____

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiffs Mark A. Freeman and Timothy K. Stringer own United States Patent No. 5,186,347 (the '347 patent), which is a patent for a spill-proof closure used in dispensing liquid beverages. They filed this lawsuit alleging that sippy cups sold by the defendant Gerber Products Company infringe certain claims of the '347 patent. The case was tried to a jury beginning December 12, 2006. On December 18, 2006, the jury returned a verdict of no infringement and that claims 7, 9, 14, and 16 of the '347 patent are invalid as anticipated and/or obvious in view of prior art. This matter is now before the court on the only remaining issue in the case—Gerber's assertion of laches, which is an equitable defense for the court to decide. The court has thoroughly considered the evidence and arguments presented at trial and is now prepared to issue its findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a). For the reasons set forth below, the court rejects Gerber's assertion of this defense.

**FINDINGS OF FACT**

The court finds that the following facts were established (or conversely, where stated as such, not established) by the preponderance of the evidence at trial.  Gerber began marketing and selling the allegedly infringing no-spill sippy cups in 1997.  Plaintiffs knew about Gerber's allegedly infringing activities by September of 1998, as evidenced by a letter Mr. Freeman sent to Gerber dated September 9, 1998, in which Mr. Freeman raised the possibility of a license.  (Pls.' Ex. 46.)  This proposal was rejected by Gerber by way of a responsive letter dated November 19, 1998.  (Pls.' Ex. 47.)  Plaintiffs did not file the current lawsuit until May of 2002.

During the period of the delay between when plaintiffs were aware of Gerber's allegedly infringing activities and when they filed this lawsuit, plaintiffs entered into agreements licensing the patent to other licensees.  Specifically, they entered into a license with Safety 1st dated April 29, 1999; a license with Johnson & Johnson Consumer Products Company dated May 13, 1999; and a license with Munchkin, Inc. dated March 19, 2002.  (Pls. Exs. 7-9.)  In February of 1999, they commenced a patent infringement lawsuit against The First Years, Inc.  This lawsuit settled in December of 1999.  (Def.'s Ex. 454.)  During the period of delay, plaintiffs did not expressly notify Gerber that it was engaged in the lawsuit with The First Years, Inc.  In fact, from the time when Gerber started selling its sippy cups at the beginning of 1997 until the time plaintiffs commenced this lawsuit, the only contact between plaintiffs and Gerber was their exchange of correspondence in late 1998

2

concerning plaintiffs' suggestion, and Gerber's rejection, of a licensing arrangement. Gerber was well aware that plaintiffs were individuals of limited means.

Although Gerber contends that it could have switched to a noninfringing alternative (such as a valve with a curved valve head or a duck bill) if it had been given notice of the potential infringement, the evidence at trial belies any suggestion that Gerber would have done so. Gerber began development of its no-spill cup in late 1995. It learned of the existence and potential significance of the Freeman '347 patent in 1996. Notwithstanding Gerber's knowledge of the '347 patent, Gerber did not change its product design in an attempt to design around the patent. Thus, by the time Gerber launched its no-spill cup product line at the beginning of 1997, it was well aware of the existence of the Freeman '347 patent. When Mr. Freeman implicitly accused Gerber of infringement by way of his letter dated September 9, 1998, Gerber stated in its response that it did not believe it was infringing the plaintiffs' patent. Years later, when plaintiffs filed this lawsuit in May of 2002, Gerber still did not change its product design. Gerber's sippy cup design has been a commercial success from the time Gerber began selling and marketing it in 1997. The court finds that Gerber was well aware of the potential infringement but deliberately chose not to switch to another alternative.

Although Gerber contends that it suffered economic prejudice by virtue of plaintiffs' delay in bringing suit because it expanded its product line and increased sales during that time period, Gerber has not established that its product line expansion or increased sales were in any way related to plaintiff's delay in filing suit. As stated previously, Gerber had already

completed its product development phase and launched its product by the beginning of 1997. Thus, Gerber's investment in initially developing its product was already a sunk cost by that time. Gerber has not established any nexus between its expansion of its product line and increased sales, on the one hand, and, on the other hand, plaintiffs' asserted delay in filing this patent infringement lawsuit. The court finds that to the extent Gerber may have decided to expand its product line and sought to increase its sales, that decision was solely attributable to Gerber's business decision to attempt to capture market share and make profits; it was not attributable to any delay by plaintiffs in filing this lawsuit.

Gerber contends that key witnesses are no longer available who would have aided in Gerber's defense and whose absence has resulted in Gerber's inability to present a full and fair defense on the merits. Some of those witnesses are former Gerber employees, but Gerber has not established that any of those former employees are unavailable as beyond the subpoena power of the court. Another witness passed away. Gerber has not, however, established that this witness would more likely than not have been able to offer any more meaningful or persuasive testimony than that which was offered by other witnesses at trial. Current Gerber employees and representatives of Liquid Molding Systems provided ample testimony about Gerber's product development phase. Also, patent attorney Carl Clark testified concerning the legal aspects of the potential patent infringement. Although some witnesses could not recall the meaning of certain notations, the court finds that, to the extent that the meaning of those notations was unclear from the testimony presented, those notations were not particularly material to the resolution of the case. The court finds that Gerber did

4

not establish that the one witness who passed away would more likely than not have been able to shed light on the meaning of this notation.

The depositions taken in this matter are replete with instances of witnesses' responding "I don't know" to deposition questions. The court finds, however, that this evidence possesses no probative value on the issue of whether plaintiff's delay in filing this lawsuit resulted in Gerber's inability to present a full and fair defense on the merits. Most of the "I don't know" responses do not reflect witnesses' failing memories attributable to a lapse of time, but, rather, that witnesses simply did not know the answers to counsels' questions. Moreover, "I don't know" responses to deposition questions are not uncommon. Perhaps most importantly, Gerber has not directed the court's attention to any particular "I don't know" response(s) that were material to the resolution of the case and that would more likely than not have been more meaningful if plaintiffs had filed this lawsuit sooner.

## CONCLUSIONS OF LAW

Laches is cognizable as an equitable defense to a claim of patent infringement. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992) (en banc). Laches may exist where the plaintiff's neglect or delay in bringing suit, taken together with lapse of time and other circumstances, causes prejudice to the defendant and operates as an equitable bar. *Id.* at 1028-29. "Laches focuses on the dilatory conduct of the patentee and the prejudice which the patentee's delay has caused." *Id.* at 1031-32. Thus, to successfully invoke the laches defense to a patent infringement suit, a defendant has the burden to prove

5

two factors: first, that the plaintiff delayed in filing suit for an "unreasonable and inexcusable" length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant; and, second, that the defendant suffered "material prejudice attributable to the delay." *Id.* at 1032.

## A.    <u>Unreasonable and Inexcusable Delay</u>

The length of time that may be deemed unreasonable has no fixed boundaries, but rather depends on the circumstances of the case. *Id.* at 1030; *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 773 (Fed. Cir. 1995). The period of delay is measured from the time plaintiffs knew or in the exercise of diligence reasonably should have known of the defendant's alleged infringing activities to the date of suit. *Aukerman*, 960 F.2d at 1032. The availability of delay based on constructive knowledge of the alleged infringer's activities imposes on patentees the duty to police their rights. *Wanless v. Gen. Elec. Co.*, 148 F.3d 1334, 1338 (Fed. Cir. 1998). Constructive knowledge may be based on pervasive, open, and notorious activities that a reasonable patentee would suspect were infringing. *Id.* Sales and marketing of a product similar to or embodying technology similar to the patented invention gives rise to a duty to investigate whether there is infringement. *Id.*

The court concludes that, based on a theory of constructive knowledge, the period of delay must be measured from approximately early 1997 when Gerber began marketing and selling its sippy cups until plaintiffs filed suit in May of 2002. Thus, the period of delay is approximately five years and four months.

Gerber contends that plaintiffs' delay in filing suit was inexcusable on the grounds that plaintiffs have not met their burden of proving their delay is excused by virtue of their other litigation with The First Years, Inc. because plaintiffs did not provide Gerber with notice of their other litigation. Gerber's argument is without merit, first, because it ignores the burden of proof that applies in this particular case. A delay of more than six years raises a presumption of laches and shifts to the patentee the burden of proving that the delay was reasonable, excusable, and non-prejudicial. *Id.* at 1337. Here, however, the period of delay was less than six years. Consequently, the burden of proof remains with Gerber to establish that plaintiffs' period of delay in filing suit was inexcusable. Moreover, to the extent that Gerber contends that plaintiffs were required to give Gerber notice of their litigation with The First Years, Inc., Gerber relies on case law which pre-dates the Federal Circuit's en banc opinion in *Aukerman*. In light of *Aukerman*, the Federal Circuit has rejected prior precedent which might have suggested a hard and fast requirement of explicit notice to the defendant of the existence of the other proceedings and the patentee's intent to enforce its rights against the alleged infringer at the conclusion of other litigation. *Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1293 (Fed. Cir. 1992). Instead, *Aukerman* restored equitable flexibility, noting that the equities may or may not require the plaintiff to communicate the reasons for the delay to the defendant. *Id.* In this case, Gerber has not established that the equities required plaintiffs to give Gerber notice of plaintiffs' 1999 litigation against The First Years, Inc. as justification for their delay in filing suit against Gerber. Plaintiffs had approached Gerber in 1998 about the possibility of a licensing arrangement and Gerber

7

rejected plaintiffs' suggestion, opting instead to take the position that it was not infringing plaintiffs' patent. Gerber knew that plaintiffs were individuals of limited means and made a deliberate choice to take the risk that plaintiffs would not initiate litigation. Consequently, the court concludes that Gerber has not met its burden of proving that plaintiffs' delay was inexcusable.

**B.  <u>Prejudice</u>**

Material prejudice to Gerber resulting from plaintiffs' delay in bringing suit may be either economic or evidentiary. *Aukerman*, 960 F.2d at 1033. Economic prejudice arises when a defendant suffers the loss of monetary investments or incurs damages that likely would have been prevented by earlier suit. *Id.* at 1033. The defendant must prove the existence of a nexus between the patentee's delay in filing suit and the expenditures. *Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1294 (Fed. Cir. 1992). The Federal Circuit has repeatedly emphasized the importance of the fact that the alleged infringer must have changed its position "because of and as a result of the delay." *State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1066 (Fed. Cir. 2003) (quotation omitted); *see also Gasser Chair*, 60 F.3d at 773 ("We reiterate that a change in the economic position of the infringer during the period of delay must be as a result of the delay; the infringer must prove that the change in economic position would not have occurred had the patentee sued earlier."); *Hemstreet*, 972 F.2d at 1294 ("The change must be because of and as a result of the delay, not simply a business decision to capitalize on a market opportunity.").

The court concludes that Gerber has not proven a nexus between plaintiffs' delay in filing suit and any expenditures made by Gerber. That is, Gerber did not prove that it did anything differently than it otherwise would have done had it not been for plaintiffs' delay in filing suit. In fact, based on the court's findings of fact above, the court concludes quite the opposite: Gerber would not have done anything differently if plaintiffs had filed suit earlier. *See, e.g.*, *Meyers v. Brooks Shoe, Inc.*, 912 F.2d 1459, 1463 (Fed. Cir. 1990) (failure to show prejudice from delay in filing suit where evidence indicated that the accused infringer would have continued its activity anyway; "From all that appears, Brooks would have followed the same course regardless of what Meyers did or did not do."). Gerber made a deliberate business decision to reject plaintiffs' suggestion that Gerber might be infringing plaintiffs' patent and to proceed with its original plan for product development, marketing, and sales. *See, e.g.*, *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1371-72 (Fed. Cir. 2001) (affirming district court's finding of no laches where the court concluded that based on the defendant's firm belief from the outset that its product was not infringing, coupled with its conduct after being contacted by the plaintiff, the defendant's economic decisions were merely business decisions to capitalize on a market opportunity); *cf. Hemstreet*, 972 F.2d at 1294 (noting the accused infringer made a deliberate business decision to proceed by regarding the plaintiff's warning). Accordingly, Gerber has not established economic prejudice from plaintiffs' delay in filing suit.

"Evidentiary, or 'defense' prejudice, may arise by reason of a defendant's inability to present a full and fair defense on the merits due to the loss of records, the death of a

witness, or the unreliability of memories of long past events, thereby undermining the court's ability to judge the facts." *Aukerman*, 960 F.2d at 1033. "Conclusory statements that there are missing witnesses, that witnesses' memories have lessened, and that there is missing documentary evidence, are not sufficient." *Meyers v. Asics Corp.*, 974 F.2d 1304, 1308 (Fed. Cir. 1992) (reversing district court's grant of summary judgment on laches where "none of the defendants state[d] exactly what particular prejudice it suffered from the absence of these witnesses or evidence"). The court concludes, for the reasons stated in the court's findings of fact, that Gerber has failed to meet its burden of proving evidentiary prejudice. The court does not believe that Gerber has shown that it was hampered from presenting a full and fair defense by virtue of the death of any witness or by virtue of failing memories.

**C.    Conclusion**

In sum, the court concludes that, notwithstanding the plaintiffs' delay of approximately five years and four months in bring suit, Gerber has not met its burden of proving that delay was an unreasonable and inexcusable length of time or, perhaps even more importantly and more obviously, that Gerber suffered any material economic or evidentiary prejudice resulting from the delay. Consequently, the court finds Gerber's laches defense to be without merit.

**IT IS THEREFORE ORDERED BY THE COURT** that the court rejects Gerber's assertion of the defense of laches.

10

**IT IS SO ORDERED** this 22nd day of December, 2006.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

11